UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO ADRIAN PRIEGO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SULLIVAN, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-02366-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 33 |

　　　　Gustavo Adrian Priego is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983.  Priego alleges that defendants were deliberately indifferent to his serious medical needs in failing to adequately treat his wrist pain and denying him surgery.  Defendants Dr. Adams, Dr. Bright, and Dr. Sullivan have moved for summary judgment.  Priego filed an opposition, defendants filed a reply, and the Court has considered the supplemental briefing by both parties. The motion is granted.

**I.　　BACKGROUND**

　　　　The facts are largely undisputed.  Priego was incarcerated at Salinas Valley State Prison ("SVSP") during the relevant time.  Am. Compl. at 5-6.  Adams was chief medical executive at SVSP responsible for administering the medical program and ensuring that appropriate policies were in place.  Motion for Summary Judgment ("MSJ"), Adams Decl. ¶¶ 2-5.  Bright was chief physician and surgeon at SVSP from November 2009 to January 2011 and from October 2012 to January 2014.  MSJ, Bright Decl. ¶ 2.  Bright was responsible for overseeing physicians and surgeons at SVSP and approving requests submitted by physicians.  *Id*. ¶ 5.  Sullivan was a primary care physician and treated Priego between February 2011 and January 2013.  MSJ, Sullivan Decl. ¶¶ 1, 3.  Sullivan examined and diagnosed inmates and referred them for outpatient

appointments and procedures. *Id*. ¶ 1.

Priego began reporting pain in his right wrist in 2008. Bright Decl, Ex. B at 34-44. It was diagnosed as carpal tunnel syndrome. *Id*. at 34. Between November 2008 and July 2011 Priego received two x-rays and an EMG, which is similar to an MRI, of his wrist. *Id*. at 8. The EMG in November 2008 showed mild compression of the median nerve but no acute evidence of disruption. *Id*. An x-ray in March 2009 showed soft-tissue swelling consistent with recent injury, but no fracture, dislocation, or foreign body was found. *Id*. In response to complaints of pain, Tramadol was ordered in March 2009. *Id*. at 36. Tramadol was continued in 2010. *Id*. 22, 23, 25. Methadone was provided for pain starting in June 2010. *Id*. at 19-23; Sullivan Decl., Ex. A at 2-6.

Priego was seen by a nondefendant doctor on December 3, 2010. Bright Decl, Ex. B at 19. It was noted that Priego suffered from carpal tunnel of his bilateral wrist. *Id*. Priego complained of back pain from doing push-ups. Id. It was recommended that he avoid push-ups or any strenuous activities. *Id*.

In February 2011, Sullivan issued Priego a chrono that restricted him to limited duty work due to the carpal tunnel syndrome. Sullivan Decl., Ex. A at 1. Sullivan examined Priego on April 19, 2011, and determined that Priego should be weaned off of methadone. Sullivan Decl., Ex. A at 5-6. Yet, because the pain was chronic, Sullivan ordered a new x-ray of Priego's wrist that was taken on July 22, 2011, and the results were normal. *Id*. at 11.

Plaintiff states that he fell down on his right wrist on September 11, 2011, which caused severe pain.[1] Opposition at 5. Plaintiff was seen be medical staff on November 1, 2011. Bright Decl, Ex. B at 17. He stated his wrist hurt, but he also stated that he was doing a lot of burpees (an exercise which requires use of his wrists). *Id*. Motrin was provided because, even though Priego denied the allegation, it was noted that he was caught distributing strong drugs. *Id*. Plaintiff was seen by a nurse on December 20, 2011. Opposition at 32. He reported pain in his wrist and right side of his jaw. *Id*. He stated the pain was off and on and was from a 15-year-old injury. *Id*. He

---

[1] Priego contends this fall is what led to his wrist pain, yet the medical reports and Priego's own medical requests demonstrate that he suffered wrist pain for several years before September 2011.

1   was prescribed Ibuprofen or Tylenol for the pain. *Id*.

2        Sullivan treated Priego on May 16, 2012, regarding his wrist pain and noted that there was
3   no new injury. Sullivan Decl., Ex. A at 17. Sullivan also offered Ibuprofen or Tylenol for pain.
4   Opposition at 6. Sullivan submitted a request for Priego to be seen by an outside orthopedic
5   specialist. Sullivan Decl., Ex. A at 17. The request was denied because it did not include enough
6   information. *Id*. at 20. Sullivan examined Priego on June 14, 2012, and Sullivan submitted a
7   request for an MRI which was approved and occurred on August 30, 2012. *Id*. at 20-24. The MRI
8   showed tears of intercarpal ligaments and triangular fibrocartilage. *Id*. at 24.

9        Priego was seen by nondefendant Dr. Tuvera on September 11, 2012. *Id*. at 28. Tuvera
10  splinted the wrist, prescribed Naproxen for pain, and submitted a request for Priego to be seen by a
11  plastic surgeon for possible surgery. *Id*. at 28. Priego was then seen by Dr. Zewert on September
12  28, 2012. *Id*. at 29-32. Zewert recommended surgery to repair the tears in Priego's cartilage. *Id*.
13  It was also recommended that Priego avoid excessive exercise. *Id*. at 32. Sullivan requested
14  Priego to be seen by Zewert for the cartilage repair surgery. *Id*. at 35-37.

15       Adams denied the request for surgery because it did not include enough information to
16  determine medical necessity; it was unclear if the problem was acute or chronic, and if it was a
17  functional impairment. *Id*. at 36; Adams Decl. ¶ 4. Sullivan submitted another request for surgery
18  which was denied by Bright in January 2013 because triangular fibrocartilage tear repairs were
19  designed for athletes to return to play and were not medically necessary. Sullivan Decl., Ex. A at
20  38; Bright Decl. ¶ 10.

21       Bright met with Priego on April 16, 2013 and performed an extensive review of his
22  medical records. Bright Decl, Ex. B at 7-9. He noted that Priego was being provided Tylenol
23  with codeine. *Id*. Priego stated that his wrist was never pain-free and described it as a dull kind of
24  pain that was worst when he would wring out his laundry. *Id*. He said he also has pain holding a
25  book. *Id*. Plaintiff did maintain an exercise regime up until December 2012. *Id*. Up until
26  December 2012, Priego was able to do push-ups or burpees on a daily basis. *Id*. He could do a set
27  of 20 before the pain became too great. *Id*. He would then stop, allow the pain to subside, and
28  then attempt more push-ups or burpees. *Id*. He stopped the exercises when the surgery was

1  denied because he did not want to make his injury worse.  *Id*.  Bright noted that the risk-to-benefit
2  ratio for surgery was not in Priego's favor and it was not clear that the pain was any different than
3  in the past.  *Id*.  He concluded there was little chance that there would be resolution of the mild
4  pain with surgery, plus there would be risk for infection, scarring, increased pain, bleeding,
5  hematoma and a decreased range of motion of his wrist.  *Id*.  Bright stated that if Priego had
6  degenerative-type triangular fibrocartilage, which would put him at an increased risk of tear after
7  his fall, then surgical outcomes are poor.  *Id*.  The MRI did not address if there were these
8  degenerative-type changes.  *Id*.

9  Priego was transferred to Pelican Bay State Prison in October 2013.  Am. Compl. at 12.
10 He is still being treated for wrist pain, and prison staff noted that as recently as March 2014,
11 Priego was exercising on the yard and playing hand ball, hitting the ball with both hands.  Seals
12 Decl., Ex. B at 14.

### A.     Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id*.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id*.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id*. at 324

1  (citing Fed. R. Civ. P. 56(e) (amended 2010)).

2  For purposes of summary judgment, the Court must view the evidence in the light most
3  favorable to the nonmoving party; if the evidence produced by the moving party conflicts with
4  evidence produced by the nonmoving party, the court must assume the truth of the evidence
5  submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).
6  The Court's function on a summary judgment motion is not to make credibility determinations or
7  weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v.*
8  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

9  Deliberate indifference to serious medical needs violates the Eighth Amendment's
10  proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);
11  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX*
12  *Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of
13  "deliberate indifference" involves an examination of two elements: the seriousness of the
14  prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

15  A serious medical need exists if the failure to treat a prisoner's condition could result in
16  further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of
17  an injury that a reasonable doctor or patient would find important and worthy of comment or
18  treatment, the presence of a medical condition that significantly affects an individual's daily
19  activities, or the existence of chronic and substantial pain are examples of indications that a
20  prisoner has a serious need for medical treatment. *Id.* at 1059-60.

21  A prison official is deliberately indifferent if he or she knows that a prisoner faces a
22  substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate
23  it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of
24  facts from which the inference could be drawn that a substantial risk of serious harm exists," but
25  also "must also draw the inference." *Id.* If a prison official should have been aware of the risk,
26  but did not actually know, the official has not violated the Eighth Amendment, no matter how
27  severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference
28  of opinion between a prisoner-patient and prison medical authorities regarding treatment does not

5

1  give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  In
2  addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical
3  indifference. . . . [Prisoner] would have no claim for deliberate medical indifference unless the
4  denial was harmful."  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.
5  1985).

## II.  DISCUSSION

Defendants first argue that Priego is not suffering from a serious medical need.  They state that Priego continued with push-ups and other exercises that put weight on his wrist during much of the relevant time of this action.  Priego contends that he was in severe pain and he was deprived of life's necessities such as holding a book, doing laundry, writing, or exercising.  There is a fact dispute about the seriousness of Priego's wrist pain, and Defendants are not entitled to summary judgment on the assertion that Priego's wrist injury and pain were not serious.

Defendants also argue that even if Priego had a sufficiently serious medical need, they did not act with a culpable state of mind to establish an Eighth Amendment violation.  The record reflects that Priego was provided a great deal of medical care and treatment from 2008 to 2013.  With respect to the allegation that Priego was denied pain medication, it is undisputed that he was provided Tramadol from 2009 through 2010.  In 2010 and 2011 he was provided methadone, a narcotic pain reliever.  After he was weaned off the methadone, Priego was still provided Motrin, Ibuprofen, and Tylenol.  In 2012 he was provided Naproxen.  In 2013 he was provided Tylenol with codeine.

Priego says he should have had stronger medication, but the fact remains that defendants provided pain medication throughout this period, in addition to regular medical treatment.  Defendants and other doctors also informed Priego to cease push-ups and other activities that put stress on his wrist, but Priego continued these activities for much of the relevant period.  Defendants have demonstrated they were not deliberately indifferent to his pain based on the narcotic and non-narcotic pain medication provided and other medical treatment.

Defendants have also demonstrated that they were not deliberately indifferent to Priego's wrist injury.  Priego does not dispute the treatment that was provided.  He received multiple x-

6

rays, an MRI, and an EMG. He was regularly seen by medical staff from 2008 to 2013, during his time at SVSP. He was provided the pain medication discussed above and a chrono that limited his duty work. Sullivan, his primary care physician, treated him regularly and repeatedly referred him to outside surgeons. Sullivan also attempted to obtain clearance for surgery for Priego. Sullivan did not fail to respond to Priego's medical needs or interfere with his treatment; therefore, Sullivan is entitled to summary judgment. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Adams's only involvement in this case was denying the first request for surgery. It is undisputed that she had no involvement in treating Priego's wrist. She denied the request for surgery because it did not contain enough information to determine if it was medically necessary. The request did not describe whether the problem was acute or chronic, and if it was a functional impairment. Adams was not deliberately different by denying one request that did not present enough information and then was later resubmitted and reviewed by another doctor. Adams is also entitled to summary judgment.

Priego contends that Bright's denial of the second request for surgery demonstrates deliberate indifference. It is undisputed that other doctors recommended the surgery. In denying surgery, Bright noted that Priego maintained an exercise regime up until December 2012. From 2008 until December 2012, Priego was able to do push-ups or burpees on a daily basis, which put a great deal of weight and pressure on his wrist. He could do a set of 20 before the pain became too great. He would then stop, allow the pain to subside, and then attempt more push-ups or burpees. Priego performed these exercises despite many doctors insisting that he cease such activities.

Bright noted that it was not clear that Priego's wrist pain was any different than it had been since 2008. Bright found that due to these factors the chance of Priego having decreased pain following the surgery was low and there would be risk for infection, scarring, increased pain, bleeding, hematoma and a decreases range of motion of his wrist. Bright noted that it was unclear if Priego had degenerative-type triangular fibrocartilage and the MRI did not address this issue. If Priego had degenerative-type triangular fibrocartilage then surgical outcomes would be poor.

1 While Bright disagreed with Priego and the other doctors, there is no evidence that his denial of the surgery was medically unacceptable or that he denied it in conscious disregard of Priego's health. Rather, the undisputed facts show that Bright reached his conclusion based on Priego's lengthy history of performing life's daily activities and strenuous exercises that put weight on his wrist; it was not clear if the wrist pain had changed over the years; and the type of surgery Priego sought was designed for athletes to return to play. The various factors that contributed to Bright's decision, including the activities Priego could perform and the risks of surgery, demonstrate that the denial of the surgery did not amount to a failure to treat a condition that "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059-60. Priego has also failed to present additional evidence that this case involved more than a difference of opinion between several doctors, which "does not give rise to a § 1983 claim." *Franklin*, 662 F.2d at 1344. For all these reasons, summary judgment is granted to defendants.

### A. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555

U.S. at 236.

Even if the Court were to find that defendants had deprived Priego of a constitutional right, they would still be entitled to qualified immunity. Adams never treated Priego. Her only involvement in this case was denying the first request for surgery because it did not contain enough information to determine if it was medically necessary. The request did not describe whether the problem was acute or chronic and if it was a functional impairment. It would not be clear to a reasonable official that denying surgery without sufficient information concerning the patient's medical condition and history would be unlawful.

Nor would it be clear to a reasonable official in Sullivan's position that providing all the medical treatment that he did would constitute deliberate indifference to Priego's medical needs. Sullivan issued Priego a chrono that restricted him to limited duty work, and Sullivan continued to provide Ibuprofen or Tylenol for pain after Priego was weaned off the narcotic pain medication. It was Sullivan who obtained the MRI for Priego, referred him to outside surgeons, and repeatedly requested surgery.

Even if it was found that Bright deprived Priego of a constitutional right, Bright is entitled to qualified immunity based on the situation that he confronted. While other doctors recommended surgery, Bright noted that it was not clear that Priego's wrist pain was any different than it had been and that there was a low chance of decreased pain following the surgery. Bright was also concerned with the risk of scarring, increased pain, bleeding, hematoma and a decreased range of motion of his wrist. Bright noted that it was unclear if Priego had degenerative-type triangular fibrocartilage and the MRI did not address this issue. If Priego had degenerative-type triangular fibrocartilage then surgical outcomes would be poor.

While Priego stated he had difficulty doing his laundry, reading, and writing, it is undisputed that he maintained an exercise regime during most of the relevant time despite doctors telling him to avoid excessive exercise. Priego was able to do push-ups or burpees on a daily basis, which put a great deal of weight and pressure on his wrist. Bright is entitled to qualified immunity because it would not be clear to a reasonable official that denying surgery based on

these facts and this situation would be unlawful.[2]

## III. CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 33) is **GRANTED**.

2. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2016

JAMES DONATO
United States District Judge

---

[2] The Court need not address the argument that Adams did not personally participate in the alleged constitutional deprivation because the Court has not found a constitutional violation and Adams is entitled to qualified immunity.

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUSTAVO ADRIAN PRIEGO,

    Plaintiff,

    v.

SULLIVAN, et al.,

    Defendants.

Case No. 14-cv-02366-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 21, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gustavo Adrian Priego ID: P-87815
PBSP-SHU (C/3 #205)
P.O. Box 7500
Crescent City, CA 95532

Dated: March 21, 2016

Susan Y. Soong
Clerk, United States District Court

By: _____
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO

11